**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STONE BREWING CO., LLC, | § | |
| | § | |
| Petitioner | § | **Miscellaneous Case No.** 4:19-mc-1958 |
| | § | |
| v. | § | Arising from Civil Action No. |
| | § | 3:18-cv-00331-BEN-LL, pending in the |
| FAUST DISTRIBUTING CO., INC., | § | United States District Court for the |
| | § | Southern District of California |
| Respondent. | § | |

## PETITIONER'S RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

Stone Brewing Co., LLC ("Stone") respectfully submits this motion to compel Faust Distributing Co., Inc. ("Faust") to comply with the January 28, 2019 document subpoena issued pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "Subpoena"), which is attached hereto as Exhibit 1. Stone served the Subpoena in a matter pending in the United States District Court for the Southern District of California captioned *Stone Brewing Co., LLC v. Molson Coors Brewing Company, MillerCoors LLC, and Does 1 through 25, inclusive*, No. 3:18-cv-00331-BEN-LL (S.D. Cal.) (the "Underlying Litigation"). In support of its Motion to Compel, Stone would show as follows:

### I.     SUMMARY

1.     The Subpoena seeks documents that are plainly relevant to the Underlying Litigation in three straightforward requests. Stone has filed a complaint alleging trademark infringement, false designation of origin, trademark dilution, unfair competition, and declaratory relief against the defendants in the Underlying Litigation (collectively, "MillerCoors"). Shortly before the Underlying Litigation was filed, MillerCoors rebranded its "Keystone" beer as

"STONE" (the "Rebrand"), despite Stone's decades-long use of its incontestable STONE® mark for its own craft brews. Faust is a beverage distributor who distributes numerous MillerCoors products, including Keystone products. Because Faust raised objections to Stone's reasonable document requests and has failed to produce any documents in response to the Subpoena, Stone must file the instant Motion.

2.      For these reasons and the reasons set forth below, Stone respectfully requests that this Court compel Faust's compliance with the Subpoena.

## II.      BACKGROUND

### A.  The Underlying Lawsuit.

3.      Stone is a pioneering craft brewery headquartered in Escondido, California, and is the registered owner of the incontestable trademark registration for STONE®. It filed a Complaint against MillerCoors on February 12, 2018, which is attached to this Motion as Exhibit 2. Stone alleges, among other things, that MillerCoors's unauthorized use of the "STONE" moniker for its Keystone products: (1) infringes on Stone's long-held registered trademark, a violation of federal law; (2) constitutes false designation of origin under federal law; (3) dilutes the distinctive quality of Stone's famous mark and brand in violation of federal and California law; and (4) constitutes unfair competition under California law. Ex. 2 at 18-22. The Complaint seeks preliminary and permanent injunctions, damages, attorneys' fees, and a declaratory judgment that MillerCoors's continued unauthorized use of the STONE® mark in connection with the sale, marketing, or distribution of its beer product would infringe on Stone's rights in the mark. *Id.* at 23-24.

### B.  The Subpoena.

4.      On January 28, 2019, the District Court presiding over the Underlying Litigation issued a Subpoena to Produce Documents, Information, or Objects to Faust Distributing Co., Inc.,

which commanded Faust to produce certain documents on or before February 11, 2019. Ex. 1 at 1. The Subpoena is narrowly targeted and is one of several non-party subpoenas that Stone has procured in the Underlying Litigation to individuals and entities that, like Faust, have knowledge of MillerCoors's use of the STONE® mark in connection with the sale, marketing, or distribution of its beer product. In three requests, the Subpoena seeks production of documents and communications (1) relating to the Keystone Brand or Keystone Products from January 1, 2013 to present; (2) relating to Stone from January 1, 2013 to present; and (3) relating to the Underlying Litigation. Ex. 1 at 8.

### III.   ARGUMENT AND AUTHORITIES

#### A.  The Legal Standard.

5.     Rule 45(c)(2)(A) permits parties to obtain from nonparties the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Under Rule 45, the party serving a subpoena "may move the court for the district where compliance is required for an order compelling production…." FED. R. CIV. P. 45(d)(2)(B)(i). Rule 34 "governs requests for production of documents and ESI from a party and explains that '[a]s provided in Rule 45, a non party may be compelled to produce documents and tangible things or to permit an inspection.'" *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 447–48 (N.D. Tex. 2015) (quoting FED. R. CIV. P. 34(c)) (addressing nonparty's motion to quash a non-party subpoena in its entirety). Rule 45 does not create a more restrictive set of guidelines for non-party discovery; the interplay with Rule 34 regarding non-party discovery is well-established. Indeed, Fifth Circuit courts apply the requirements of Rule 34 party discovery "with no less force" when enforcing compliance with Rule 45 non-party discovery. *Id.* at 448 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812,

818 (5th Cir. 2004)) (emphasizing that the obligations imposed on requesting parties are the same with non-party discovery as they are with party discovery).

6.        Any objection to a subpoena "must be served before ***the earlier of*** the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(D)(2)(B) (emphasis added). "[A] non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same [Rule 34] prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity[,] and that the responding party must explain and support its objections." *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014)). But even in the face of proper objections, Fifth Circuit courts prefer modifying subpoenas to preventing the requested discovery outright.[1] *See Wiwa*, 392 F.3d at 818.

### B. The Discovery Sought in the Subpoena Does Not Exceed the Fair Bounds of Discovery.

7.        Faust failed to produce any documents in response to the Subpoena, and instead merely offered boilerplate, generic objections to the Subpoena's reasonable requests. Stone served the subpoena on January 28, 2019, and specified February 11, 2019, as the compliance date. On February 8, 2019, Faust served a response to Stone's Subpoena, attached hereto as Exhibit 3, in which it denied possessing some categories of documents requested and objected to others. For

---

[1] In certain circumstance where no timely motion to quash or modify has been filed (thus waiving the opportunity to modify or quash the subpoena), a court may still choose to limit or modify the extent of the discovery sought under the Rules. Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

example, Faust raised boilerplate objections that Stone's first request "(1) it seeks information that is not relevant to the claim or defense of any party; (2) it is overbroad in that it seeks information that goes beyond what is relevant to the parties claims or defenses; and (3) the burden and expense it would place on Faust outweighs its likely benefit." Ex. 3 at 3. Faust's objections do not meet the specificity requirements of Rule 34. *See Am. Fed'n of Musicians*, 313 F.R.D. at 46.

8.     After Faust failed to produce documents in response to the Subpoena, Stone sought first to obtain relevant information during party discovery. Such discovery showed that MillerCoors regularly communicated and interacted with its distributors regarding the Keystone brand and its 2017 Rebrand that is the subject of the Underlying Litigation, and also communicated with distributors about the litigation itself. Accordingly, Faust is highly likely to have documents in its possession, custody, and control that are relevant to the Underlying Litigation, including internal documents uniquely in the possession of Faust.

9.     On May 21, 2019, Stone's counsel conferred with Faust's counsel regarding the requests, and the parties identified several categories of responsive documents, including: (1) Faust's communications with MillerCoors regarding Keystone from 2015 to present; (2) documents related to MillerCoors's 2017 Keystone Rebrand or "Own the Stone" campaign; (3) any promotional, marketing, or sales material for Keystone provided by MillerCoors from 2015 to present; (4) any documents related to MillerCoors Distributor Conference; and (5) any documents regarding Stone, including any reports of confusion or customer inquiries. Faust's counsel agreed that Faust would search for documents responsive to these categories. On June 3, 2019, Faust's counsel left a voicemail with Stone's counsel in which he represented that Faust did not possess documents responsive to some, but not all, of the categories listed above. A follow up voicemail by Stone's counsel to Faust's counsel received no response. Stone's counsel followed up again by

email on June 27, 2019, but again received no response. To date, Faust has produced no documents in response to the Subpoena.

10.     Despite Faust's objections, the Subpoena here is not overbroad, nor does it exceed the bounds of fair discovery. Whether a subpoena presents an undue burden, thus exceeding the bounds of fair discovery, depends on "(1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (citing *Wiwa*, 392 F.3d at 818). In total, the Subpoena makes three straightforward requests for (1) documents and communications related to the Keystone Brand or Keystone Products from January 1, 2013 to the present; (2) documents and communications related to Stone from January 1, 2013 to the present; and (3) documents and communications related to the Underlying Litigation. Ex. 1 at 8. That is, the questions specifically seek documents relevant to the facts at issue in the Underlying Lawsuit. Moreover, in response to Faust's objections, and in an effort to encourage Faust's compliance with the Subpoena, Stone engaged with Faust to further narrow the scope of the Subpoena requests. Nonetheless, Faust has not responded.

11.     Stone alleges MillerCoors has purposefully infringed Stone's incontestable, federally-registered trademark in such a way as to cause confusion amongst consumers, retailers, and distributors. Faust, as a major distributor of Keystone products, likely has in its possession documents providing evidence of that confusion. Further, discovery to date has revealed that MillerCoors fosters close relationships with distributors like Faust, even previewing the rebrand of its Keystone products for distributors at is annual distributor conference. As a result of this relationship, Faust likely has in its possession relevant marketing materials MillerCoors supplied to its distributors. Finally, because key to determining the likelihood of confusion will be the extent

6

to which the distribution and retail channels for Stone and Keystone products overlap, Faust likely has in its possession evidence of its distribution of Keystone products. Thus, the documents sought by the Subpoena go directly to Stone's allegations in its Complaint against MillerCoors, and Stone is entitled to the discovery sought. Faust's failure to produce *any* documents in response to the subpoena is unjustifiable.

12.     Furthermore, Stone's requests deliberately set forth specific time periods to ensure that only relevant documents not in Stone's possession are searched for and produced. *Id*. For example, the Subpoena only requests relevant communications in Faust's possession from January 1, 2013 to present, or specifically related to the Underlying Litigation, which was filed in February 2018. *Id.* This period includes documents from the time period when the infringing 2017 Keystone Rebrand was being planned and executed, as well as a short period beforehand that is relevant for purposes of comparison with the Rebrand. In conference with Faust's counsel, Stone has further narrowed the timeframe for certain categories, requesting instead documents from 2015 to present. Despite Stone's efforts to negotiate, Faust still has not complied with the Subpoena.

13.     Faust simply failed to produce *any* documents responsive to Stone's Subpoena. Because the requests at issue are not beyond the scope of reasonable discovery, Faust should be compelled to comply with Stone's requests.

### IV.     **PRAYER FOR RELIEF**

For the reasons set forth above, Stone requests this Court order Faust Distributing Co., Inc. to comply with the Subpoena.

Dated: July 2, 2019                              Respectfully submitted,

                                        By: */s/ Ryan A. Botkin*
                                             Ryan A. Botkin
                                             Texas State Bar No. 00793366
                                             ryan@wittliffcutter.com

                                             **WITTLIFF | CUTTER, PLLC**
                                             1806 West. Ave.
                                             Austin, Texas  78701
                                             Telephone:  (512) 960-4438
                                             Telecopier:  (512) 960-4869

                                             **ATTORNEY FOR
                                             STONE BREWING CO., LLC**


## CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of July, 2019, the below have been served a true and correct copy of this document via First Class Mail.

Paul D. Sculley
Munsch Hardt Kopf & Harr, P.C.
700 Milam Street, Suite 2700
Houston, TX 77002

ATTORNEYS FOR FAUST DISTRIBUTING CO.


                                        */s/ Ryan A. Botkin*
                                        Ryan A. Botkin

# EXHIBIT 1

# B R A U N **HAGEY** & B O R D E N LLP

San Francisco & New York

**J. Tobias Rowe, Esq.**
rowe@braunhagey.com

January 28, 2019

**<u>VIA PERSONAL SERVICE</u>**

Faust Distributing Co., Inc.
c/o Donald F. Faust Sr.
10040 I-10 East
Houston, TX 77029

      **RE.**    **Subpoena for Documents –** *Stone Brewing Co., LLC v. MillerCoors LLC, et al.*
              **Case No. 3:18-cv-00331-BEN-JMA (S.D. Cal. 2018)**

Dear Mr. Faust:

    We are counsel to Stone Brewing Co., LLC ("Stone") in connection with its claims against MillerCoors LLC ("MillerCoors") in the above-captioned matter.  On September 7, 2018, our office addressed a litigation hold letter to Faust Distributing Company asking that it retain and not destroy any documents in its possession, custody or control regarding Stone or its products, the Keystone Brand and its products, or this dispute.

    Please find enclosed a subpoena for records requiring production of this information.  If you have any questions or would like to discuss the subpoena and compliance therewith, please feel free to contact me at rowe@braunhagey.com or 415-599-0210 x 113.

              Kind regards,

              J. Tobias Rowe

Encl.

**San Francisco**
351 California Street, 10th Floor
San Francisco, CA 94104
Tel. & Fax:  (415) 599-0210

**New York**
7 Times Square, 27th Floor
New York, NY 10036-6524
Tel. & Fax: (646) 829-9403

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| Stone Brewing Co., LLC | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   3:18-cv-00331-BEN-LL |
| MillerCoors LLC | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     Faust Distributing Co., Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: See Attachment A | Date and Time: |
|---|---|
| | 02/11/2019 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/28/2019

| CLERK OF COURT | | |
|---|---|---|
| _____ | OR | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiff
Stone Brewing Co., LLC_____ , who issues or requests this subpoena, are:

J. Tobias Rowe; 351 California Street, 10th Floor, San Francisco, CA 94104; rowe@braunhagey.com; 415-599-0210

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   3:18-cv-00331-BEN-LL

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                           *Server's signature*

                                      _____
                                           *Printed name and title*

                                      _____
                                           *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

Plaintiff Stone Brewing Co., LLC hereby demands production for inspection, photographing and copying the documents and tangible things described in the categories below on February 11, 2019 at 9:00 a.m. at Faust Distributing Co., Inc., 10040 East Freeway, Houston, TX 77029; the law offices of BraunHagey & Borden LLP, 351 California Street, 10th Floor, San Francisco, CA 94104; or via email, FTP, or by such other means of electronic transmission as agreed upon by the parties.

**DEFINITIONS**

1.      "You" and "Your" as used in these requests shall mean to include collectively and individually, Faust Distributing Co., Inc., and any partners, employees, agents and representatives, consultants, attorneys or other persons acting under their control or behalf and includes, without limitation, any associated entity, including any predecessor, successor, affiliate, subsidiary or parent entity.

2.      "Plaintiff" and "Stone" as used in these requests shall mean to include collectively and individually, Stone Brewing Co., LLC, and any partners, employees, agents and representatives, consultants, attorneys or other persons acting under their control or behalf and includes, without limitation, any associated entity, including any predecessor, successor, affiliate, subsidiary or parent entity.

3.      "Defendant" and "MillerCoors" as used in these requests shall mean to include collectively and individually, MillerCoors LLC, and any partners, employees, agents and representatives, consultants, attorneys or other persons acting under their control or behalf and includes, without limitation, any associated entity, including any predecessor, successor, affiliate, subsidiary or parent entity.

4.      The "Keystone Brand" and "Keystone Products" shall mean and include the *Keystone Light*, *Keystone*, and/or *Keystone Ice* brands, and the associated cans, logos, packaging, trade dress, advertising and marketing collateral.

1

5.      "Communication" or "Communications" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, including, but not limited to, telephone calls, emails (whether via company server or personal webmail or similar accounts), faxes, text messages (on work or personal phones), instant messages, social media messages, Skype or Voice over Internet Protocol messages, letters, notes, and voicemails.

6.      "Concerning" includes supporting, referring to, relating to, alluding to, responding to, commenting on, reviewing any aspect of, discussing, describing, mentioning, analyzing, constituting, evidencing and/or pertaining to the subject of the request.

7.      "Document" or "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rules of Civil Procedure 34(a)(1)(A), including, but not limited to: all writings and recordings, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including, but without limitation to, email and attachments, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, telegrams, receipts, returns, summaries, pamphlets, books, interoffice and intraoffice communications, offers, notations of any sort of conversations, working papers, applications, permits, file wrappers, indices, telephone calls, meetings or printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural representations of any kind (including, without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical, magnetic, optical or electric records or representations of any kind (including, without limitation, computer files and programs, tapes, cassettes, discs, recordings), including metadata.  A draft or non-identical copy is a separate document within the meaning of this term.

8.      "Identify," when used with respect to a person (entity or individual) shall mean to provide that person's legal and business name(s), contact information, title, department and

2

relationship to this dispute, as applicable.  When "identify" is used with respect to facts, actions, or tangible items, it shall mean to set forth in detail a description of those facts, actions, or tangible items, including the dates, location, and any persons necessary to provide detailed information concerning the relevant facts, actions, or tangible items.

9.     "Electronic Media" shall mean to include any device or media capable of storing electronic, mechanical, magnetic, optical or electric records or representations of any kind and includes, without limitation, computers, hard drives, computer files and programs, servers, cloud storage services, tapes, cassettes, disks, and recordings.

10.     In the case of a person other than a natural person, "identify" shall mean to state: its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer.

11.     With respect to natural persons, "identify" shall mean to state:  the name of the person; the person's current business address, including the name of the entity at which he or she works; if no business address is known, state the residential address.

12.     With respect to documents, "identify" shall mean:  to state the date of the document, the type of document (e.g., email, letter, or memo), the creator of the document, and other information sufficient to reasonably describe the document.

13.     "Related to," "relating to" or "regarding" a subject extends to mentioning, referring to, discussing, describing, reflecting, evidencing, identifying, dealing with, consisting of, constituting, or in any way pertaining to the subject, in whole or in part.

14.     The singular includes the plural and vice versa, except as the context may require otherwise; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as

3

possible the scope of any request; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including without limitation."

## **INSTRUCTIONS**

1.      The following inspection demands seek production for inspection and copying of all responsive Documents in Your possession, custody, or control, wherever located, and specifically includes all Documents in the possession, custody, or control of Your agents, partners, officers, employees, attorneys, accountants, investigators, representatives, and each of them.

2.      Any non-identical copy of a Document, including copies with notes, highlighting, comments, or marginalia of any nature, and drafts, must be identified and produced as a separate Document.

3.      If there are no Documents responsive to a category in this inspection demand, please state so in writing.

4.      For each Document that You decline to make available for inspection and copying on the grounds of privilege or the attorney work product rule, provide the following information:

      a.      State the date on which the Document was created;

      b.      State the title of the Document;

      c.      Briefly describe the nature and contents of the Document;

      d.      Identify each person or entity that received a copy of the Document or to whom the Document or its contents were disclosed;

      e.      Identify the privilege or rule that You contend protects the Document from disclosure; and

      f.      Identify each fact on which You base Your contention that the privilege or rule identified in Your response is applicable.

5.      If any material is redacted from a Document, please so indicate in the response to the inspection demand and state the basis for such redaction.

4

6.      Please produce the original of each Document and all copies thereof, if any copy is other than identical to the original, in the order called for in the categories listed below.

7.      If, for any reason, any of the objects or tangible things to be produced pursuant to these inspection demands has been destroyed, lost or otherwise disposed of, please state for each category the following information:

      a.      A description of the Document, object or tangible thing to be produced.  If the destroyed, lost or otherwise disposed of item is a Document, Identify the Document by date, drafter, recipient and subject matter.

      b.      The date the Document, object or tangible thing was lost, destroyed or disposed of.

      c.      All witnesses who have knowledge of the loss, destruction or disposal.

      d.      If the loss, destruction or disposal relates to an object or tangible thing, Identify all Documents that relate or refer to the loss, destruction or disposal.

8.      Documents should be produced in their native format where applicable.

## REQUESTS FOR PRODUCTION

1.      All documents and communications related to the Keystone Brand or Keystone Products from January 1, 2013 to the present.

2.      All documents and communications related to Stone from January 1, 2013 to the present.

3.      All documents and communications related to the above-captioned litigation.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:18-cv-00331-BEN-LL

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Faust Distributing Co., Inc c/o
on *(date)*  1-28-19  .                       Donald F. Faust Sr, registered
                                                Agent

☑ I served the subpoena by delivering a copy to the named person as follows:  Barbara

Executive Assistant
_____  on *(date)*  2-4-19  ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____  for travel and $ _____  for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date:  2-7-19 _____

Cleta R. Louis  Psc #4249
*Server's signature*

Cleta R. Louis, Private process Server
*Printed name and title*

7610 Caddo Rd
*Server's address*

Additional information regarding attempted service, etc.:

# EXHIBIT 2

1 | J. Noah Hagey, Esq. (SBN: 262331)
   | hagey@braunhagey.com
2 | J. Tobias Rowe, Esq. (SBN: 305596)
   | rowe@braunhagey.com
3 | Rebecca B. Horton, Esq. (SBN: 308052)
   | horton@braunhagey.com
4 | BRAUNHAGEY & BORDEN LLP
   | 220 Sansome Street, 2nd Floor
5 | San Francisco, CA 94104
   | Telephone:  (415) 599-0210
6 | Facsimile:  (415) 276-1808
7 |
8 | ATTORNEYS FOR PLAINTIFF
   | STONE BREWING CO., LLC
9 |

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| STONE BREWING CO., LLC, | Case No. **'18CV0331 BEN JMA** |
| Plaintiff, | COMPLAINT FOR: |
| v. | (1) Trademark Infringement |
| MOLSON COORS BREWING COMPANY, MILLERCOORS LLC, and DOES 1 through 25, inclusive, | (2) False Designation of Origin<br>(3) Trademark Dilution<br>(4) Unfair Competition<br>(5) Declaratory Relief |
| Defendants. | **JURY TRIAL DEMANDED** |

1   Plaintiff Stone Brewing Co., LLC (hereinafter, "Stone," "Plaintiff," or
2   "Gargoyle") brings this Complaint against Defendants Molson Coors Brewing
3   Company and MillerCoors LLC (collectively, "MillerCoors" or "Defendants") and
4   alleges, on personal knowledge as to its own actions and on information and belief as
5   to the actions of others, as follows:

6   ## INTRODUCTION

7   1.   Plaintiff Stone Brewing brings this trademark action to halt Defendant
8   MillerCoors's misguided campaign to steal the consumer loyalty and awesome repu-
9   tation of Stone's craft brews and iconic STONE® trademark.  MillerCoors recently
10  decided to rebrand its Colorado Rockies-themed "Keystone" beer as "STONE" – sim-
11  ultaneously abandoning Keystone's own heritage and falsely associating itself with
12  Stone's well-known craft brews.

13  2.   Since 1996, the incontestable STONE® mark has represented a promise
14  to beer lovers that each STONE® beer, brewed under the Gargoyle's watchful eye, is
15  devoted to craft and quality.  Like all Gargoyles, it is slow to anger and seeks a re-
16  spectful, live-and-let-live relationship with peers and colleagues – even those purvey-
17  ing beers akin to watered-down mineral spirits.  But Stone and the Gargoyle cannot
18  abide MillerCoors's efforts to mislead beer drinkers and sully (or steal) what STONE®
19  stands for.

20  3.   STONE® beer is beloved by millions of beer drinkers across America.
21  Resolute and fearless, the brewery has always stood for a philosophy and approach
22  that defies the watered-down orthodoxy of "Big Beer" companies and their fizzy yel-
23  low offerings.  As Big Beer has stumbled in recent years, the Gargoyle has thrived.
24  STONE® is one of the most recognizable and popular craft beer brands in the U.S.
25  and the global standard bearer for independent craft beer, with sales in all fifty U.S.
26  States and across five continents.

27  4.   Stone's rise has not gone unnoticed by the largest beer company in
28  America, MillerCoors.  MillerCoors has long coveted the STONE® mark, but has

been blocked from using STONE-centric branding because of Stone's incontestable federal registration.  In 2007, the U.S. Patent and Trademark Office forced Mil-lerCoors to admit that using the mark "STONES" to sell Keystone would infringe the STONE® trademark.  Yet in 2017, MillerCoors marketing executives decided to try again.  Not long after Stone cofounder Greg Koch publicly announced that the Gar-goyle would never sell out, MillerCoors began plotting to rebrand "Keystone" as "STONE" or "THE STONE."  MillerCoors has since followed-through on that plan by recently relabeling its products and launching "STONE"-centric advertising.

5.     The Gargoyle does not countenance such misdirection of consumers; nor does it support those who would disavow their own Colorado mountain heritage to misappropriate another's ancestry.  Stone accordingly brings this action to help usher Keystone back to the Rockies.  Should Keystone not willingly return, Stone intends to seek expedited discovery in aid of a preliminary injunction, as well as permanent in-junctive relief, declaratory relief, damages, costs and attorneys' fees, among other rem-edies.

## THE PARTIES

6.     Plaintiff Stone Brewing Co., LLC ("Stone" or "Plaintiff") is a pioneer-ing craft brewery with its principal place of business at 2120 Harmony Grove Road, Escondido, California.  Stone is a duly registered limited liability company organized under California law.  Prior to 2016, Stone was organized as a California corporation named Koochen Vagners Brewing Co., d/b/a Stone Brewing Co.  Stone is the regis-tered owner of the incontestable trademark registration for STONE®.

7.     Stone is informed and believes that Defendant Molson Coors Brewing Company ("Molson Coors") is a multinational beer conglomerate that owns the *Key-stone*, *Coors*, *Miller*, and *Molson* beer brands, among others.  Molson Coors is a Del-aware Corporation with its principal places of business at 1801 California Street, Suite 4600, Denver, Colorado.

8.     Stone is informed and believes that Defendant MillerCoors LLC ("MillerCoors") is the United States operating arm of Molson Coors.  MillerCoors is a Delaware limited liability company with its principal place of business at 250 S. Wacker Drive, Suite 800, Chicago, Illinois.  Upon information and belief, MillerCoors is a wholly-owned subsidiary of Molson Coors that markets the *Keystone* and *Keystone Light* beer brands in the United States.

9.     Upon information and belief, Defendants operate under a unified management structure controlled and directed by Defendant Molson Coors Brewing Company.  Each Defendant acted in concert with the other Defendants and aided, abetted, directed, approved, or ratified each act or omission alleged in this Complaint to have been performed by Defendants.

10.     The true names of the Defendants sued as Does 1 through 25, inclusive, are unknown to Stone, who therefore sues these Defendants by such fictitious names. Stone will amend this Complaint to allege the true names and capacities of these Defendants when they are ascertained. Upon information and belief, these fictitiously named Defendants were involved in the design, implementation, approval, and furtherance of the conduct complained of herein or received benefits from those transactions.

## **JURISDICTION AND VENUE**

11.     This action arises and is brought under the Trademark Act, known as the Lanham Act, 15 U.S.C. §§ 1050, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

12.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

13.     This Court possesses personal jurisdiction over Defendant Molson Coors because Molson Coors regularly and continuously transacts business in the State of California by advertising and selling its products within the State and this District,

1  including but not limited to sales of infringing Keystone products at numerous loca-
2  tions in the City and County of San Diego and this District.

3      14.    This Court possesses personal jurisdiction over Defendant MillerCoors
4  because MillerCoors regularly and continuously transacts business in the State of Cal-
5  ifornia by advertising and selling its products within the State and this District, includ-
6  ing but not limited to sales of infringing Keystone products at numerous locations in
7  the City and County of San Diego and this District.

8      15.    Additionally, this Court possesses personal jurisdiction over Defendants
9  Molson Coors and MillerCoors because, on information and belief, Defendants have
10 targeted their tortious conduct at the State of California and this District by selling or
11 distributing infringing Keystone products in this District and elsewhere.  Defendants
12 either expected or reasonably should have expected that their activities would cause
13 harm to Stone in this District.

14     16.    Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b) be-
15 cause a substantial part of the events or omissions giving rise to this action occurred
16 in this district.  The Gargoyle's primary abode is in this District, where Plaintiff Stone
17 has its headquarters and regularly conducts business.  Additionally, infringing Key-
18 stone products are offered for sale to consumers at numerous locations in the City and
19 County of San Diego and this District.

20                        **FACTUAL BACKGROUND**

21     **A.    Foundations of STONE®**

22     17.    Before it grew into an internationally recognized craft beer brand, Stone
23 had its origins in the creative fermentation of California in the 1980s and '90s.  Found-
24 ers Steve Wagner and Greg Koch first crossed paths in the effervescent Los Angeles
25 rock-and-roll music scene of the 1980s.  Years later, they raised a glass at brewing
26 mecca U.C. Davis in Northern California, where both had enrolled to channel their
27 creative energies into brewing. In a series of conversations, the future founders of
28

STONE® discovered that they shared a love of bold, interesting beers and fiery obsession with being a part of the craft beer revolution.

18.     After a few years commiserating on the bleak state of the American beer market, the pair decided to take matters into their own hands.  Greg and Steve made plans to open a brewery that would be defined by an unwavering commitment to quality and sustainability, holding true to the art of brewing bold, flavorful beers. STONE® was born.

19.     Over the course of the next four years, Stone signed a lease on a small warehouse that it turned into a brewery, went from kegging its beers to having two bottling lines, and released its most popular beer, STONE IPA®.  From Stone's earliest bottles to its first website and delivery trucks, the STONE® mark has signified Stone's rebel culture of creativity, quality, and independence.



**Stone's First Year of Production**

20.     From the start, Stone assiduously developed and maintained its trademark and brand.  Every Stone beer proudly bears the registered incontestable trademark STONE®, which has been registered with the U.S. Patent and Trademark Office since June 23, 1998 under U.S. Registration No. 2168093.

**B.     STONE® Rolls On**

21.     Sprinting into the 2000s, Stone grew in size and reach, overflowing its first facility.  Stone entered a new phase when it planned a custom-built brewhouse tailored to fit Stone's commitment to quality, sustainability, and craft.

22.     The new brewery opened in Escondido, California in 2005, just before Stone's ten-year anniversary.  In a stroke of innovation, Stone also opened the first *Stone Brewing World Bistro & Garden™*, which shattered the "brewpub" mold with local, organic ingredients and a seasonal menu constantly inspired by fresh, worldly cuisine and the Slow Food movement.

23.     The stage was set for a craft brewing revolution.  Throughout the 2000s, Stone continued to win converts with its bold, unorthodox beers and artisan philosophy.  Other brewers joined the fray, transforming the tastes of millions of beer drinkers who had not known what they were missing.  In droves, Americans began turning away from incumbent Big Beer standards sold by the likes of MillerCoors in favor of craft beers with more compelling brands and flavors.

24.     The strength of Stone's brand kept pace with its commercial success.  On or about June 28, 2008, the USPTO accepted Stone's Combined Declaration of Use and Incontestability for STONE®, rendering the mark incontestable as a matter of law.

**C.     STONE® Today**

25.     Today, Stone is the ninth-largest independent craft brewer in the United States.  Presiding over a rapid expansion of the craft brewing industry from 800 breweries in 1996 to more than 5,000 today, Stone has maintained its commitment to true independent craft and sustainability.

26.     STONE® beers are sold in thousands of stores, bars, and restaurants throughout the country, including at major grocery stores and retailers.  Instantly recognized by the STONE® name, STONE® enjoys exceptional customer loyalty and

1  engagement, with a devoted fan base unrivalled by other brewers.  A sampling of pop-

2  ular STONE® beers appears thus:

3
4
5

**Selection of Stone's Iconic Brews**

13     27.    Stone and its products have been widely lauded by national and interna-

14  tional press, as well as connoisseurs and critics.  In 2010, Stone Brewing was named

15  the "**All-Time Top Brewery on Planet Earth**" by *Beer Advocate* magazine.  Numer-

16  ous national and international publications have recognized STONE® as an industry

17  leader, including *The New York Times*, *The Wall Street Journal*, *The Economist*, *USA

18  Today*, and *Time* magazine, to name a few.

19     28.    Even as Stone has expanded its range of offerings with bold new flavors

20  and numerous seasonal beers, the STONE® mark has remained constant, an unchang-

21  ing identifier of STONE®'s reputation for quality and commitment to its craft.

22     29.    By virtue of these efforts, STONE® is uniquely beloved among Ameri-

23  can and international beers, with a passionate and loyal following among consumers

24  and critics alike.  STONE® enjoys exceptional consumer engagement ratings on social

25  media, with scores nearly double the nearest craft brewer.  Loyal customers have even

26  been known to commission tattoos of STONE® in homage – and then travel to the

27  Escondido brewery to proudly show off their ink.

28

30.     STONE®'s brand and commitment to producing innovative artisan beer have helped it defy the status quo and disrupt the American beer industry.  In 2016, Stone produced more than 10.6 million gallons of beer for sale to customers in all fifty U.S. States.

31.     STONE®'s rise has placed it into direct competition with MillerCoors and its Big Beer associates in the U.S. beer market.  In 2017, STONE®'s U.S. sales exceeded $70 million, placing it among the ten best-selling craft brewers in the country – including erstwhile "craft" breweries now operating under MillerCoors and other beer conglomerates.

32.     Stone also has taken its beer brewing passion abroad.  STONE® is now the first American craft brewer to independently build, own and operate a brewery in Europe – in the heartland of Germany where serious beer has been enjoyed for over a thousand years.  Doing so has strengthened Stone's already diverse international fan base, who happily drink STONE® hops throughout the European Union and China, plus Canada, Australia, Singapore, Taiwan, Puerto Rico, Panama and Brazil, among other nations.  It is fair to say that STONE® has become an inherently distinctive and internationally recognized standard-bearer for American craft beer.

### D.     MillerCoors and Keystone's Origins

33.     Defendant Molson Coors is a multinational beer conglomerate formed after a series of mergers involving Coors, Miller, and Canadian brewing giant Molson. In the United States, Molson Coors operates through its subsidiary, Defendant MillerCoors.  (Collectively, Molson Coors and MillerCoors are referred to hereinafter as "MillerCoors").  Among dozens of brands in its portfolio, MillerCoors sells domestic lager brands Keystone and Keystone Light.

34.     Since its inception, MillerCoors and its predecessors have sold its "Keystone" sub-premium beer brand in cans with a primary KEYSTONE mark and prominent imagery of the Colorado Rocky Mountains.  The name "Keystone" is the name

of a popular ski resort town founded in the 1970s in Colorado. The mountain range depicted on the can is styled after the Wilson Peak located in the Rockies.



**Keystone's Brand**

35.    In doing so, the "Keystone" name served to remind consumers of the brand's Colorado roots and ties to its parent brand, Coors.

36.    Those ties apparently no longer bind so tight. After a series of corporate mergers and relocations, Keystone no longer is headquartered in its ancestral home in the Rocky Mountains. The brand is now part of a large "portfolio" of beers under the Molson-Miller-Coors conglomeration, with its U.S. base in Chicago, Illinois. This may explain the company's new insistence on dropping the "Key-" from its brand in favor of "STONE" – in an effort to chase the craft market and Stone in particular.

**E.    MillerCoors's "Big Beer" War Against Craft Beer**

37.    MillerCoors' "Big Beer" brands like Keystone have suffered most from the rise of tasty brews like STONE®. As craft beer was on the rise from the late 1990s throughout the 2000s—celebrating double-digit growth each year—Big Beer increasingly lost market share. From 2011 to 2016, Keystone Light sales dropped more than 25%. *USA Today* recently dubbed Keystone one of the "**Beers Americans No Longer Drink**" in a December 2017 article.

38.    To stem these losses, MillerCoors has embarked on a plan to wrestle back market share. In addition to rebranding Keystone to emulate STONE® (discussed below), MillerCoors recently acquired Stone's San Diego neighbor and former independent craft brewery, Saint Archer Brewing. MillerCoors itself has explained that

this expansion is aimed to eliminate competition from independent brewers like Stone – efforts that the conglomerate attempts to disguise by using a supposed "craft" beer holding entity, Tenth and Blake Beer Company.

39.  Nothing about such activity is benign.  Upon these acquisitions, MillerCoors drops prices to supra-competitive rates and ramps up production and distribution.  In doing so, it aims to undermine independent craft brewers' ability to compete while deceptively continuing to advertise its mass-produced brands as "craft" beers.

### F.  Keystone's Rebranding as "STONE"

40.  MillerCoors' renaming of "Keystone" as "STONE" marks an aggressive second phase of the company's pincer move against craft beer and Stone in particular.

41.  In April, 2017, the company quietly announced that Keystone was to be rebranded as "STONE".  New cans, boxes and logos were formulated to emphasize "STONE" as a primary mark.

42.  Since the release of the new design, MillerCoors has launched a viral marketing campaign that touts Keystone's self-proclaimed new name of "STONE." In recent months, the brand's Facebook and Instagram pages have been scrubbed of the word "key" and filled with posts strategically placing Keystone beer cans so that only "STONE" is prominently displayed to viewers, with accompanying videos to match. These changes point unmistakably to a concerted effort by MillerCoors to capitalize on the goodwill and recognition associated with the STONE® mark and brand.

### 1.  Removing "KEY" from Keystone's Can and Packaging

43.  In a glaring departure from Keystone's traditional brand, MillerCoors has redesigned the label of Keystone cans and cases to emphasize its shift to "STONE."

44.     The new can abandons the high ground by dropping Keystone's signature mountain imagery.  In its place, the can now lacks any imagery at all and relies entirely on a large display of the new name, "STONE."  The result would be unrecognizable to Keystone drinkers of yore.  In effect, MillerCoors has abandoned the KEYSTONE mark and heritage in favor of a brand centered entirely on one word: "STONE":



**Old Can**          **Re-Branded Can**

45.     Keystone's new can design overtly copies and infringes the STONE® trademark.  Indeed, MillerCoors has effectively admitted that this copying is intentional.  Before the cans hit shelves, MillerCoors announced in an official blog post that it was launching "**a can that plays up the "Stone" nickname.**"  (http://www.millercoorsblog.com/news/keystone-light-new-look-15-pack/).  A new, self-proclaimed "nickname," that is.

46.     The new Keystone can displays STONE® as its primary brand identifier, with no apparent hint of the traditional KEYSTONE brand or its signature mountain theme:



**Keystone's New Can**

11
COMPLAINT

47.     The rest of the new Keystone packaging conspicuously copies the STONE® mark.  Indeed, the new Keystone 30-packs omit virtually any reference to "Keystone" at all.  Instead, the packaging is designed to create a "wall of STONE" when displayed in stores:

### Keystone's Confusing Case Stacks

 

48.     Packaging and labels are critical to beer marketing, ensuring that brands stand out to consumers perusing the beer aisles in stores.  The overwhelming emphasis of "STONE" on the new Keystone packaging is a declaration that Keystone has abandoned its roots in an effort to simply become "STONE" to consumers.  But there is already one – and only one – true STONE® in the market.

### 2.     Keystone's Deceptive Social Media Campaigns

49.     At the same time, MillerCoors has also launched an escalating advertising and social media attack to establish STONE® as a new name for Keystone.

50.     MillerCoors has instituted a social media blitz on its publicly available sites where it solely refers to Keystone as "STONE" and strategically places its product so that "STONE" is the most prominent, if not the only, graphic visible to viewers.

51.     On Facebook, virtually every post on Keystone's page now refers to Keystone as STONE®, confirming that there is nothing coincidental about the campaign.  In the last several weeks, MillerCoors has sharply escalated its use of

COMPLAINT

STONE® on Keystone's social media accounts, with near-daily posts during the holiday season. These social media posts feature cans deliberately positioned to emphasize the terms "STONE" and "STONE LIGHT."

### Keystone's Misleading Facebook Posts



52. On Instagram, Keystone continues its misappropriation with posts that take every opportunity to emphasize the word "STONE," including taglines such as: "The 'Stone that keeps on giving"; "Come bearing 'Stones"; "Season's greetings from the 'Stone family"; and "'Stone sweet 'Stone." The emphasis on this new name, "STONE," is accompanied by images displaying the Keystone can with "STONE" as the most prominent graphic.

### Keystone's Deceptive Instagram Taglines



53.     The videos that accompany the majority of Keystone's recent Facebook and Instagram posts further evidence Keystone's effort to seize the STONE® mark. The videos themselves use taglines that play up the "STONE" name, continue the strategic placement of the Keystone can so the viewer only notices "STONE," and conclude with STONE-centric messages such as the following:



54.     Upon information and belief, MillerCoors has also purchased advertising on major websites, such as ESPN.com, referring to Keystone as "STONE". Such mass advertising broadcasts the infringing "STONE" name beyond Keystone's immediate social media audience to the general public at large.

**Keystone's Widespread ESPN Ad**

14
COMPLAINT

55.     Further, in recent months, Keystone launched and widely promoted a contest entitled "Hunt the STONE." This contest has been publicized in physical ads and via social media, showcasing Keystone's new can design and intent to abandon the name "Keystone" for its beer in favor of "STONE." These new ads differ drastically from previous ads advertising the contests.



56.     It is beyond doubt that any day now, Keystone intends to drop the "Key" prefix altogether.

### 3.     MillerCoors Is Brewing Confusion

57.     MillerCoors has long coveted the STONE® mark. For years, Stone's incontestable registration has stood as an obstacle to Keystone's marketing efforts, preventing use of "STONE"-centric branding. Now, MillerCoors is willfully infringing the STONE® mark in a calculated attempt to dilute it beyond repair.

58.     In September 2007, MillerCoors applied to register the mark "STONES" with the USPTO for use in connection with Keystone Light (U.S. Serial No. 77/284,994). The USPTO refused to register the mark for the obvious reason that "STONES" was likely to be confused with STONE® when used on beer. The USPTO's office action *explicitly cited* the incontestable STONE® registration as the basis for its refusal, putting MillerCoors on formal notice of Stone's rights (in the unlikely event it was not aware of them already).

59.     Tellingly, MillerCoors did not dispute the USTPO's determination that its "STONES" mark would infringe STONE® when used in connection with Keystone Light.  MillerCoors instead abandoned its application, admitting that confusion with STONE® beer was likely.

60.     By the time MillerCoors launched its recent deceptive rebranding of Keystone, it had thus been on notice of Stone's rights in the STONE® mark for at least a decade.

61.     MillerCoors and its executives were, and are, keenly aware of the STONE® brand and its rich craft heritage.  In fact, MillerCoors has published articles on its own "Behind the Beer" Blog recognizing Stone as a "nationally distributed brewer[]" and one of the "biggest and most well-established craft brewers."  Against this backdrop, Defendants' current infringement is plainly willful.

62.     By designing their own campaign to capture the STONE® mark and associated goodwill, MillerCoors seeks to mislead consumers: about the source of MillerCoors's "Keystone," the heritage of Stone's beers, and whether STONE® is just another member of MillerCoors's craft brew holding company.

63.     MillerCoors's deliberate infringement is likely to succeed in causing confusion.  Not only does MillerCoors's new "STONE" branding copy the STONE® mark verbatim, but the companies' beers compete head-to-head in store aisles across the country.  In the high-velocity beer market, where consumers make quick decisions between a proliferating array of brands, the effects of even initial confusion are likely to be momentous.

64.     Confusion is just as likely outside of stores.  The two brands use identical distribution and marketing channels, with STONE® and Keystone beers sharing the same distributors in many areas of the country.  In the marketing arena, MillerCoors launched its rebranding offensive on social media – precisely the grassroots advertising medium that STONE® has used for years to cultivate support.

65.     Beyond its new "STONE" cans, MillerCoors is admittedly seeking to establish "STONE" as a trademark and source identifier for its "new Keystone" brand. If this gambit succeeds, a bar or restaurant patron asking for a tasty STONE® brew will be just as likely to receive Keystone's watered-down imitation of beer in its place. The STONE® mark has grown to its present strength because consumers trust that STONE® will never let them down in this manner.

66.     In recent weeks, Stone has received consumer inquiries showing that MillerCoors's escalating infringement is indeed brewing confusion in the marketplace. In December 2017, for example, a consumer reached out to Stone to inquire about the brewery's new "**STONE LITE**" product – a non-existent beer that appears only in MillerCoors's deceptive advertising.

67.     Even such minor instances can have significant effects undermining Stone's reputation for independence.  Stone has earned a reputation for bold, high-quality artisan beers under the STONE® brand.  Keystone has not.  By copying STONE®, MillerCoors aims now to not only diminish Stone's trademark rights but to capitalize upon STONE®'s artisanal reputation and image.

## CLAIMS FOR RELIEF

### First Claim for Relief
### FEDERAL TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114
### (As to All Defendants)

68.     Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

69.     Plaintiff owns all right, title, and interest in the registered trademark STONE®, which it has continuously used in commerce since at least 1996.

70.     Through the conduct alleged above, Defendants' unauthorized use in commerce of STONE® infringes Plaintiff's rights in the mark and violates 15 U.S.C. § 1114 because it renders Defendants' products confusingly similar to the well-known STONE® mark and beers.  Defendants' unauthorized use of STONE® creates the erroneous impression in consumers' minds that Defendants' Keystone products have

been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the STONE® mark.

71.     Defendants' actions are a paradigmatic case of infringement under the factors enunciated in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979), for at least the following reasons:

a.     Defendants' copying of the STONE® mark is intentional.  Defendants have themselves admitted that "STONE"-centric branding such as "STONES" is likely to confuse consumers when used in connection with Keystone beer.

b.     The STONE® mark is inherently distinctive, incontestable, famous, and commercially strong.

c.     Defendants' infringing "STONE" mark is a verbatim copy of Plaintiff's genuine STONE® mark.

d.     The parties already compete directly in beer aisles, coolers, bars, and restaurants across the country.

e.     The extent of the parties' competition will only grow as Stone continues its national and international growth.

f.     The parties share identical marketing and distribution channels.

g.     The parties compete in a high-velocity market where the impact of initial consumer confusion is likely to be high.

h.     Plaintiff has received consumer inquiries indicating that confusion is occurring in the marketplace.

i.     Defendants' intentional copying of Plaintiff's mark is itself strong evidence that the infringing products are confusing consumers across the country.

72.     Defendants' imitation and unauthorized use of STONE® is causing irreparable injury to Plaintiff by, *inter alia*, destroying consumers' unique association of the STONE® mark with Plaintiff's products.

73.     Plaintiff has no adequate remedy at law for Defendants' misconduct. Unless Defendants are enjoined and restrained from continuing their infringement, consumers will continue to be confused and Plaintiff's injuries will continue to occur.

74.     Plaintiff also is entitled to recover from Defendants any gains, profits, and advantages as a result of Defendants' infringement, in an amount to be proven at trial.

75.     Defendants' intentional and willful misconduct renders this an "exceptional case," entitling Plaintiff to treble damages and attorney's fees pursuant to 15 U.S.C. § 1117.

**Second Claim for Relief**
**FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)**
**(As to All Defendants)**

76.     Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

77.     Plaintiff owns all right, title, and interest in the registered trademark STONE®, which it has continuously used in commerce since at least 1996.

78.     Through the conduct alleged above, Defendants' unauthorized use in commerce of STONE® infringes Plaintiff's rights in the mark and violates 15 U.S.C. § 1114 because it renders Defendants' products confusingly similar to the well-known STONE® mark and beers. Defendants' unauthorize use of STONE® creates the erroneous impression in consumers' minds that Defendants' *Keystone* products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the STONE® mark. Such use constitutes a false designation of origin within the meaning of 15 U.S.C.§ 1125(a).

79.     On information and belief, Defendants chose to use the STONE® mark on Keystone products with the intent to cause confusion among consumers and to deceive them into believing that Defendants' products are made by, endorsed by, or otherwise associated with Plaintiff or STONE® beers.

80.     Defendants have profited from their unfair competition, and Plaintiff has suffered damages in amount to be proven at trial.

81.    Defendants' intentional and willful misconduct in misleading U.S. consumers renders this an "exceptional case," entitling Plaintiff to treble damages and attorney's fees pursuant to 15 U.S.C. § 1117.

82.    Defendants' infringement is causing irreparable harm by confusing consumers and enabling Defendants to unlawfully profit by trading off of Plaintiff's STONE® mark. Plaintiff will continue to suffer such harm unless Defendants' infringing conduct is enjoined by this Court.

**Third Claim for Relief**
**TRADEMARK DILUTION – 15 U.S.C. § 1125(c)**
**(As to All Defendants)**

83.    Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

84.    The STONE® mark is distinctive and famous in that it is widely recognized by the general consuming public as a designation of the source of Plaintiff's goods.

85.    On information and belief, Defendants' unauthorized use of the STONE® mark began after the STONE® mark became famous.

86.    Defendants' continued unauthorized use of STONE® mark is likely to cause injury to Plaintiff's business reputation and/or the dilution of the distinctive quality of Plaintiff's famous mark and brand.

87.    Defendants' acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiff's STONE® mark, business, reputation, and goodwill. Plaintiff has no adequate remedy at law because monetary damages are inadequate to compensate Plaintiff for the injuries caused by Defendants.

**Fourth Claim for Relief**
**TRADEMARK DILUTION – Cal. Bus. & Prof. Code § 14247, *et seq.***
**(As to All Defendants)**

88.    Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

89.     The STONE® mark is distinctive and famous in that it is widely recognized by the general consuming public of California, including in this District and its environs, and as a designation of the source of Plaintiff's goods.

90.     On information and belief, Defendants' unauthorized use of STONE® mark began after the STONE® mark became famous.

91.     Defendants' continued unauthorized use of STONE® mark is likely to cause injury to Plaintiff's business reputation and/or the dilution of the distinctive quality of Plaintiff's famous mark and brand.

92.     Defendants' acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiff's STONE® mark, business, reputation, and goodwill.  Plaintiff has no adequate remedy at law because monetary damages are inadequate to compensate Plaintiff for the injuries caused by Defendants.

### Fifth Claim for Relief
### UNFAIR COMPETITION – Cal. Bus. & Prof. Code § 17200, *et seq.*
### (As to All Defendants)

93.     Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

94.     Defendants' unauthorized use of the STONE® mark in a manner that is likely to confuse and deceive consumers is unlawful, unfair, and/or fraudulent and constitutes unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

95.     Defendants have profited from their unfair competition, and Plaintiff has suffered damages in an amount to be proven at trial.

96.     Defendant's infringement is causing irreparable harm by confusing consumers and enabling Defendant to unlawfully profit by trading off of Plaintiff's STONE® mark.   Plaintiff will continue to suffer harm unless Defendants' infringing conduct is enjoined by this Court.

### Sixth Claim for Relief
### DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201-2202
### (As to All Defendants)

97.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

98.     Defendants' ongoing use of "STONE" in connection with its *Keystone* beer products infringes the registered STONE® mark.

99.     Defendants are engaged in activities directed towards further unauthorized use of the STONE® Mark in commerce in a manner that is likely to cause confusion among the relevant public that Defendants' *Keystone* beers are affiliated with, or related to, Plaintiff's STONE® beers.

100.    As such, there is a substantial, immediate and justiciable controversy between the parties in that Defendants seek to use the STONE® mark in connection with beer, while Plaintiff contends that such use infringes and dilutes Plaintiff's registered marks.

101.    Plaintiff accordingly seeks in the alternative a declaratory judgment that further use by Defendants of the STONE® mark in connection with the sale, marketing or distribution of beer would infringe Plaintiff's rights in the STONE® Mark.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Stone Brewing Co., LLC prays that the Court order and/or issue the following relief:

A.      Preliminarily and permanently enjoin Defendants from using the STONE® mark in connection with the sale, marketing or distribution of beer.

B.      Award Plaintiff its amount of damages and/or the amount of Defendants' profits arising from Defendant's unauthorized use of the STONE® Mark in the United States, pursuant to 15 U.S.C. § 1117 and under other applicable federal and/or state law.

C.    Award Plaintiff three times its actual damages according to proof, as well as the costs of this action, in accordance with 15 U.S.C. § 1117 and under other applicable federal and/or state law.

D.    Find this action to be an "exceptional case" such that Plaintiff be awarded its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117 and under other applicable federal and/or state law.

E.    Declare that Defendants' continued unauthorized use of the STONE® Mark in connection with the sale, marketing or distribution of beer would infringe Plaintiff's rights in the mark.

F.    Award Plaintiff such other and further relief as this Court deems equitable and proper.

Dated:  February 12, 2018

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By:  s/ J. Noah Hagey
           J. Noah Hagey

*Attorneys for Plaintiff*
*Stone Brewing Co., LLC*

COMPLAINT

1
             **<u>DEMAND FOR JURY TRIAL</u>**

2
       Plaintiff hereby demands a jury trial of all claims and causes of action triable

3
before a jury.

4

5
Dated: February 12, 2018            Respectfully Submitted,

6
                    BRAUNHAGEY & BORDEN LLP

7

8
                    By: <u>s/ J. Noah Hagey</u>

9
                        J. Noah Hagey

10
                    *Attorneys for Plaintiff*

11
                    *Stone Brewing Co., LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | | |
|---|---|---|
| Stone Brewing Co., LLC | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-00331-BEN-LL |
| | § | |
| MillerCoors LLC | § | |
| | § | |
| *Defendant* | § | |

**FAUST DISTRIBUTING CO.'s, RESPONSES TO STONE BREWING CO., LLC'S
SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR
OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:    Stone Brewing Co., LLC, by and through its attorney of record, J. Tobias Rowe, BraunHagey & Borden LLP, 351 California Street, 10th Floor, San Francisco, CA 94104.

Faust Distributing Co. hereby produces its responses to Stone Brewing Co., LLC's

Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in

a Civil Action.

MUNSCH HARDT KOPF & HARR, P.C.

/s/ Paul D. Sculley
Paul Sculley
State Bar No. 24008006
psculley@munsch.com
700 Milam Street, Suite 2700
Houston, Texas 77002
(713) 222-1470 (telephone)
(713) 222-1475 (facsimile)
ATTORNEYS FOR FAUST DISTRIBUTING CO.

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing has been served on counsel for Plaintiff on this the 8th day of February, 2019.

J. Tobias Rowe
BraunHagey & Borden LLP
351 California Street, 10th Floor
San Francisco, CA 94104
***Via Email: rowe@braunhagey.com***

/s/ Paul D. Sculley
Paul D. Sculley

**FAUST DISTRIBUTING CO.'S RESPONSES TO STONE BREWING CO., LLC'S
SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR
OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

1.      All documents and communications related to the Keystone Brand or Keystone Products from January 1, 2013 to the present.

RESPONSE:   Faust objects to this request because (1) it seeks information that is not relevant to the claim or defense of any party; (2) it is overbroad in that it seeks information that goes beyond what is relevant to the parties claims or defenses; and (3) the burden and expense it would place on Faust outweighs its likely benefit. Subject to and without waiving the objections,  Faust is a long time distributor of Keystone products in Southeast Texas.  The documents in its possession relating to Keystone products consist of bills of lading, invoices, and other shipping and delivery documents, none of which are relevant to the lawsuit between Stone Brewing Company and MillerCoors.

2.      All documents and communications related to Stone from January 1, 2013 to the present.

RESPONSE:   Faust has no documents or communications related to Stone Brewing.

3.      All documents and communications related to the above-captioned litigation.

RESPONSE:   Faust objects to this request because it is unclear as to what "documents and communications" would be "related to the above captioned lawsuit" and thus the request fails to describe with reasonable particularity each item or category of items requested. Subject to and without waiving the objection, Faust has no documents mentioning or discussing the lawsuit brought by Stone Brewing against MillerCoors in any way, other than the subpoena served upon it and the publically available complaint.